Commonwealth of Pennsylvania *v.* C. D. Massaro, Appellant.

Argued October 2, 1929,

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*G. A. Troutman,* and with him *C. S. Wesley,* for appellant.

*Joseph DeVito,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY GAWTHROP, J., November 18, 1929:

This appeal is from a sentence imposed upon an indictment charging defendant with drawing and delivering a check in violation of the Act of April 18, 1919, P. L. 70, which provides that "any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering, or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, although no express representation is made in reference thereto, shall be guilty of a misdemeanor."

From the evidence the following undisputed facts appear: Appellant was a general contractor on a building operation in Philadelphia and owed one Brown, a sub-contractor under him, $631.25. Brown had been demanding payment of the debt, and on

Saturday, June 2, 1928, spent "a couple of hours" with appellant while the latter endeavored to collect from several of his creditors, money with which to pay him. Appellant told Brown that he did not have sufficient funds to pay the debt because he had been unable to make his collections. So on that day, June 2nd, he gave Brown a check dated June 5th, drawn on the Northern Central Trust Company of Philadelphia for $631.25, and marked it "dated ahead." On the evening of Monday, June 4th, he called Brown on the telephone and told him that "the check was made out wrong" and that if Brown would come to his house right away he would give him another check. Brown went to appellant's house within a half an hour, taking with him the first check which was signed "Massaro, C. D." Whereupon appellant proposed to Brown that the new check be dated June 8th. Brown objected. Whereupon appellant drew the check here involved, dated June 5th, and suggested that it also be marked "dated ahead." When Brown objected appellant delivered the second check to him without this notation and again told him that he did not then have sufficient funds to meet it. The check shows that it was deposited by Brown in the Security Title & Trust Company on June 4, 1928. On that date and up to June 6th appellant's balance in the drawee trust company was $298.20.

The controlling question presented to us is whether under these facts the conviction can be sustained. By the terms of the act intent to defraud at the time of making or delivering the check is an essential element of the crime. This was a post-dated check. As such it differed from an ordinary check in that it carried on its face implied notice that there was no money presently on deposit available to meet it, with the implied assurance that there would be such funds on the day it became due. At most it amounted to a promise that on the day it became due the drawer would have

in the bank a sufficient deposit to meet it. Brown knew that this was all that it was; for he admitted express notice from appellant when he took it of the insufficiency of the deposit to meet it. We are of one mind that in the circumstances it was error to permit a jury to find that the check was made or delivered with intent to defraud Brown. A post-dated check is a familiar form of negotiable paper. It is usually given to a creditor to satisfy him temporarily and secure an extension of time for payment of an existing indebtedness. When such a check is given in such circumstances the transaction contains none of the elements of intent to defraud. This is such a case. The question seems to be new in this State, but it has arisen in other jurisdictions in prosecutions under somewhat similar statutes, and the reasoning in the decisions, so far as we have been able to discover, is in harmony with the views herein expressed. See Lovell v. Eaton (Vt.), 133 Atl. 742; Neidlinger v. State (Ga.), 88 S. E. 687; State v. Winter, 98 S. C. 294, 82 S. E. 419; Smith v. State (Ark.), 226 S. W. 531.

The judgment is reversed and the defendant is discharged from his recognizance.