Commonwealth *v.* Bonetti, Appellant.

Argued September 18, 1967.   Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

162

*Edward B. Bergman,* with him *Solo, Abrams, Bergman, Trommer & Padova,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., November 16, 1967:

Appellant Carmen Bonetti was convicted in a nonjury trial presided over by Hon. THOMAS M. REED, Judge, of violating Section 854 of The Penal Code of June 24, 1939, P. L. 872, 18 P.S. §4854, making it a misdemeanor to make, draw, utter, or deliver worthless checks and drafts. His motions in arrest of judgment, or in the alternative a new trial, having been denied and judgment of sentence imposed, this appeal followed.

The evidence showed that on June 12, 1964 Richard E. Weisz, an operator and owner of a check cashing agency in the City of Philadelphia, cashed three checks on which the appellant was payee and endorser and paid him the full amounts thereof less a one per cent cashing charge. These checks were those of the Troon

Corporation which is owned by appellant, signed in its behalf by DeMaris Bonetti,[1] wife of appellant, and drawn on the Audubon National Bank of Audubon, New Jersey. After the prompt deposit of the checks by Mr. Weisz in his bank they were returned to him by the Audubon bank for the reason that there were insufficient funds of the Troon Corporation on deposit in that institution with which to pay the checks. Thereafter Mr. Weisz communicated with the appellant and was instructed by him to redeposit the checks "that they would be all right". They were redeposited and again returned "Insufficient Funds". Thereafter, failing to reach appellant by phone, he was instructed by DeMaris Bonetti to redeposit them again. This was done but the checks were again returned with the bank's notation, "Account Closed". Thereafter notice by registered mail was given to appellant of the fact that the checks had been dishonored. Payment of the amount due has never been made to the holder by appellant or his corporation.

Two issues are raised in this appeal. The first concerns the sufficiency of the evidence to prove there were not sufficient funds in the bank and the second relates to the sufficiency of the evidence to prove that the appellant had an intent to defraud. Appellant contends that the statutory notice and presumption arising therefrom provided for in Section 854, supra, does not apply to an endorser, but only to the maker of the check;[2] and that in the absence of testimony from the

---

[1] At a previous trial a demurrer was sustained on a similar charge against DeMaris Bonetti which arose out of making and uttering of these same checks.

[2] See *Commonwealth v. McBray*, 86 Montg. Co. L.R. 238 (1966), holding that this provision applies to one delivering a check as well as to one making and uttering it. However, we do not decide this point since the case is disposed of on the other theory that appellant was the maker.

bank as to its records, any notation on the check of insufficient funds on deposit or account closed, is hearsay.

Three elements must be proved to constitute this crime. There must be a false pretense, as a false assertion of an existing fact. This, of course, relates to the fact that there is sufficient funds on deposit to pay the checks drawn on them. Second, there must be the obtaining of property or something of value thereby; and lastly, there must be an intent to defraud. *Commonwealth v. Kelinson,* 199 Pa. Superior Ct. 135, 184 A. 2d 374 (1962).

Appellant received money for the check, so there is no question raised as to the second element. As to the first, it is difficult for us to see any merit in appellant's argument. He had admitted to Mr. Weisz during previous dealings that he was the owner of Troon Corporation. His wife signed the corporation checks to him as payee. He knew they were dishonored for insufficient funds because he was notified by the holder when they were first returned by the bank. It was then that the wife directed the holder to redeposit the checks with the assurance that the checks would be all right when redeposited, admitting that appellant "had been expecting some money and he hadn't received it." The record is sufficient to support Judge REED's finding that there were insufficient funds in the bank when appellant delivered the checks to Mr. Weisz, without calling as a witness a representative of an out-of-state bank to prove it.

However, we are of the further opinion that the notice given by registered mail was also sufficient to establish both notice of insufficient funds in the drawee bank and appellant's intention to defraud. Section 854 provides:

"In any prosecution under this section, the making, drawing, uttering or delivering of a check, draft, or or-

der, payment of which is refused by the drawee because of lack of funds or credit, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, unless such maker or drawer shall have paid the drawee thereof the amount due thereon, together with interest and protest fees, within ten days after receiving notice that such check, draft, or order has not been paid to the drawee."

We find the appellant within this provision for the reason that he was not only payee and endorser but was a party to the making of these instruments. As the owner of the corporation he had his wife, as an officer, sign the checks to him for corporate purposes. This made him a party to the making, drawing, uttering and delivery of the instruments. In *Commonwealth v. VanBuskirk,* 155 Pa. Superior Ct. 613, 39 A. 2d 311 (1944), this Court recognized the principle applicable in a criminal prosecution (page 631) that, "The corporate entity will be disregarded when it is necessary to protect the rights of innocent parties, but not when such action would favor chicanery and fraud, and prejudice innocent parties." We here have no hesitancy in disregarding the corporate entity in the present case to protect an innocent party and to prevent chicanery and fraud. See *Barium Steel Corporation v. Wiley,* 379 Pa. 38, 108 A. 2d 336 (1954).

The purpose of this statute is to prevent fraud. If we were to accept the limited view urged by appellant there would be no end to the frauds that might be perpetrated by the manipulation of corporate affairs.

Judgment affirmed.