Commonwealth *v.* Conti, Appellant.

Submitted September 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Donald H. Lipson,* for appellant.

*James Knoll Gardner,* Assistant District Attorney, and *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., September 22, 1975:

Appellant, John J. Conti, Jr., was tried before a judge sitting without a jury on November 23, 1971, and was found guilty of issuing a worthless check. Post-trial motions in arrest of judgment and for a new trial were denied on November 30, 1973, and sentence was imposed. On this appeal two issues are presented: whether the evidence was sufficient to support appellant's conviction, and if it was, whether the lower court erred in denying appellant's motion for mistrial when a witness for the Commonwealth stated that appellant had pleaded guilty at a preliminary hearing, and his later motion, when that same witness stated that appellant had made an offer to settle the case.

I

Two employees of a lumber supply company, Jean Moyer and Wendel Lehman, testified for the Commonwealth. Lehman's testimony was that in February, 1970, appellant met with him to discuss the purchase of a supply of lumber, and that he told appellant he would sell him no lumber until he had received payment for past purchases and until he had a check to cover the price of any new order. Apparently appellant agreed to this arrangement because Lehman went on to testify that when he questioned appellant about the check for the new order, appellant responded, "If this check isn't any good, you can hang me." Moyer's testimony was as follows: On February 19 or 20, 1970, appellant called the lumber yard and asked the price of his new order. She said it was $1,934.49. On February 20 appellant came

to the lumber yard, gave her a check for that amount, and then gave her directions for delivering the lumber. At that time, she noted that the date on the check was February 20, 1970. She did not remember the exact day the lumber was delivered, but she felt certain it was after February 20 since she had had orders not to deliver any lumber to appellant until she received a check. On March 5, 1970, she deposited the check, but the bank rejected it because there were insufficient funds. She re-deposited the check, but it was again returned. Both Lehman and Moyer repeatedly denied that appellant had ever told them to hold the check.

Appellant testified on his own behalf, to the following effect. He explained that prior to February 4, 1970, he met with Lehman and an associate of Lehman's to discuss the purchase of enough lumber to build a house. Appellant agreed he was told he could not buy any more lumber unless he satisfied his debt for past purchases and unless he issued a check for the price of the new order. According to appellant, however, it was agreed that the lumber company would deliver the lumber and hold the check until the house reached a certain stage of completion, when funds due appellant would be released; if this arrangement proved satisfactory, it was to be repeated for the next house. On February 4, 1970, appellant went to the lumber yard and delivered a $200 check for past purchases and one for $1,934.49 for the new order. A few days later the lumber was delivered. On February 20, 1970, he called the lumber company and said to cash the first check, but in regard to the second, he said, "Hold the second check, because if you deposit it now, there's not sufficient money, and that you could hang me with it." The spokesman for the lumber yard said he would hold the check. Appellant explained that he never authorized the company to cash the check because there were never sufficient funds in the bank to cover it.

In determining the sufficiency of this evidence, we must regard it in the light most favorable to the Commonwealth, giving the Commonwealth the benefit of all reasonable inferences arising from it. *Commonwealth v. Herman,* 227 Pa. Superior Ct. 326, 323 A.2d 228 (1974) ; *Commonwealth v. Minor,* 227 Pa. Superior Ct. 343, 322 A.2d 717 (1974). So regarded, the evidence is sufficient to support appellant's conviction.

Section 854 of the Act of June 24, 1939, P.L. 872, 18 P.S. §4854, provides in pertinent part: "Whoever, with intent to defraud, makes, draws, utters or delivers any check . . . upon any bank, . . . knowing, at [that] time . . . that the maker or drawer has not sufficient funds in, or credit with, such bank, . . . for the payment of such check, although no express representation is made in reference thereto, . . . is guilty of a misdemeanor,. . . ." Accordingly, in order to convict an individual of issuing a worthless check, the Commonwealth must prove that he (1) made, drew, uttered, or delivered a check, (2) with knowledge that there were insufficient funds, and (3) with intent to defraud. *Commonwealth v. Ali,* 438 Pa. 463, 265 A.2d 796 (1970) ; *Commonwealth v. Bushkoff,* 177 Pa. Superior Ct. 231, 110 A.2d 834 (1955). In addition, the cases have required the Commonwealth to prove that at the time the check was issued, something of value passed from the payee to the drawer or maker. *See, e.g., Commonwealth v. Bonetti,* 211 Pa. Superior Ct. 161, 235 A.2d 447 (1967).

It is appellant's contention that since he post-dated the check and told the lumber yard to hold the check because of insufficient funds, he lacked the requisite intent to defraud. In *Commonwealth v. Massaro,* 97 Pa. Superior Ct. 149, 151-52 (1929), this court stated: "By the terms of the act intent to defraud at the time of making or delivering the check is an essential element of the crime. This was a post-dated check. As such it differed from an ordinary check in that it carried on its

face implied notice that there was no money presently on deposit available to meet it, with the implied assurance that there would be such funds on the day it became due. At most it amounted to a promise that on the day it became due the drawer would have in the bank a sufficient deposit to meet it. . . . When such a check is given in such circumstances the transaction contains none of the elements of intent to defraud. . . . The judgment is reversed. . . ." In *Commonwealth v. Kelinson,* 199 Pa. Superior Ct. 135, 184 A.2d 374 (1962), we affirmed the *Massaro* rule: "There must . . . [be] a false representation . . . a false representation of a present existing fact. A post-dated check is not a present promise; is not a false representation of a present existing fact that there are funds on deposit to pay the check. A post-dated check declares boldly on its face that it is nothing more than a promise to pay in the future on or after the date appearing on the face of the instrument.

"The Commonwealth has failed to establish by the evidence as a matter of law, the offenses for which this defendant stands convicted . . ." *Id.* at 143, 184 A.2d at 378. Therefore, in the present case, if the trial judge had believed appellant's testimony, he would have had to find him not guilty, for the post-dating and the hold order would have precluded a finding of intent to defraud. It is, however, the duty of the trier of fact to determine the credibility of the witnesses. *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972) ; *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968), *cert. denied,* 393 U.S. 1102 (1969). Here the trial judge obviously did not believe appellant's testimony. We must therefore look to the other evidence to see if a conviction was warranted.

According to Moyer, appellant made a check and delivered it to the lumber yard on February 20, 1970, the day it was dated, in order to obtain some lumber; and according to Lehman, when questioned about the check,

appellant said, "If this check isn't any good, you can hang me." By his own testimony, appellant knew there were insufficient funds in the bank on February 20. Thus, it is clear that by selectively accepting testimony, the trial judge could find that appellant made and delivered a check, knowing there were insufficient funds, with intent to defraud the lumber yard by obtaining lumber without giving the required consideration. Further, when appellant delivered the check he received a promise that the lumber would be delivered to him. He therefore received something of value. *See In re Ratony's Estate*, 443 Pa. 454, 277 A.2d 791 (1971) ; *Commonwealth v. Banonis*, 30 Sch. 1 (1931); Uniform Commercial Code, Act of April 6, 1953, P.L. 3, §1-201, 12A P.S. §1-201 (44) (d), eff. July 1, 1954, reeenacted October 2, 1959, P.L. 1023, §1, eff. January 1, 1960, amended August 24, 1963, P.L. 1213, §1. Thus, the evidence was sufficient to support appellant's conviction.

## II

On direct examination, the prosecutor directed Lehman's attention to the time of appellant's preliminary hearing. Defense counsel objected immediately. After argument, however, the trial judge allowed the prosecutor to continue his questioning, and he proceeded as follows:

"District Attorney: I think you testified that you had a conversation with Mr. Conti [appellant] on the day that a hearing was held in Justice of the Peace Snyder's office, is that correct?

Lehman: Yes. Due to the fact . . . .

District Attorney: Now wait a minute. Excuse me a minute. Now, when was that conversation with Mr. Conti, before, during or after the hearing?

Lehman: It was during the hearing and I'll tell you afterwards. During the hearing he pleaded guilty.

Defense Counsel: Your Honor, I object. I ask for a mistrial.

The Court: Sustained.

Defense Counsel: I ask for a mistrial, and I ask that the case be assigned to another judge.

The Court: The motion is refused.

Defense Counsel: The testimony, though, is stricken from the record do I understand.

The Court: It may be.

Defense Counsel: And my other requests are denied?

The Court: Yes."

In *White v. Maryland,* 373 U.S. 59 (1963), the United States Supreme Court held that since counsel was not present at the defendant's preliminary hearing, it was reversible error to admit testimony concerning a guilty plea made at that hearing. *Accord, Commonwealth ex rel. Firmstone v. Myers,* 431 Pa. 628, 246 A.2d 371 (1968). In the present case, defense counsel stated the appellant was not represented by counsel at the preliminary hearing, and the trial judge seemingly so found when he sustained defense counsel's objection. The trial judge was therefore correct in striking Lehman's testimony from the record. The issue, however, is whether he should also have declared a mistrial.

The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *See Commonwealth v. Fennell,* 444 Pa. 1, 278 A.2d 884 (1971) ; *Commonwealth v. Matcheson,* 215 Pa. Superior Ct. 371, 259 A.2d 174 (1969). This does not mean, however, that a prosecutor will be permitted to place highly prejudicial information before the trier of fact. There are times when evidence is so prejudicial that we cannot assume that the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication. On those occasions, a declaration of mistrial is required.

The most notable illustration of this principle is the decision in *Bruton v. United States,* 391 U.S. 123 (1968). There, after a witness had testified to an oral confession

by Bruton's co-defendant, the trial judge instructed the jury that while the confession was competent evidence against the co-defendant, it was inadmissible hearsay against Bruton and therefore must be disregarded in determining his innocence or guilt. Bruton was eventually found guilty. On certiorari, the United States Supreme Court reversed. It explained that since the co-defendant did not testify, the introduction of his confession added to the government's case substantial evidence not subject to cross-examination, which violated Bruton's Sixth Amendment right to confront his accusers. The court then went on to hold that this violation was not, and could not be, remedied by the trial judge's instruction. The Court reasoned that the evidence was so prejudicial that it simply could not ignore the practical limitations of the jury system and assume that the jurors had obeyed the trial judge's instructions.[1] *See also Jackson v. Denno,* 378 U.S. 368 (1964); *United States v. Williams,* 464 F.2d 927 (8th Cir. 1972).

This case is different from *Bruton* in that here there was no jury. The issue that arises, therefore, is whether,

---

1. "It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno* [378 U.S. 368 (1964)], there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. . . . Such a context is presented here . . .

"We, of course, acknowledge the impossibility of determining whether in fact the jury did or did not ignore Evans' [the joint-defendant's] statement inculpating petitioner in determining petitioner's guilt. But that was also true in the analogous situation in *Jackson v. Denno,* and was not regarded as militating against striking down the New York procedure there involved. It was enough that that procedure posed 'substantial threats to a defendant's constitutional rights. . . . These hazards we cannot ignore.' . . . The effect is the same as if there had been no instruction at all." *Bruton v. United States, supra* at 135, 136-37.

when appraising the impact of incompetent, highly prejudicial evidence, the same degree of caution is necessary when the case is tried without a jury as when it is tried with one.

In approaching this issue, the traditional starting point has been the general rule that the same rules of evidence should be used in jury and non-jury trials. *See Commonwealth v. Henderson*, 450 Pa. 122, 298 A.2d 891 (1973) ; *Commonwealth v. Berkery*, 200 Pa. Superior Ct. 626, 190 A.2d 572 (1963), allocatur refused, 202 Pa. Superior Ct. xxx, *cert. denied*, 375 U.S. 966 (1964) ; McCormick, *Evidence* §60 (2d ed. 1972). Despite this, a number of commentators and judges have suggested that the rules should not be applied with the same stringency when a case is tried by a judge alone. These persons are willing to presume that the judge will disregard inadmissible and rely only on competent evidence. *See generally*, *State v. Garcia*, 97 Ariz. 102, 397 P.2d 214 (1964) ; McCormick, *supra;* Levin and Cohen, The Exclusionary Rules in Nonjury Criminal Cases, 119 U. Pa. L. Rev. 905 (1971)·; Davis, Hearsay in Nonjury Cases, 83 Harv. L. Rev. 1362 (1970) ; Note, Improper Evidence in Nonjury Trials: Basis for Reversal, 79 Harv. L. Rev. 407 (1965) ; Note, Incompetent Evidence in Nonjury Trials: Ought We Presume That It Has No Effect?, 29 Ind. L. J. 446 (1954). The reasoning offered in support of this presumption is as follows. Our law of evidence is the product of the need "to shelter untrained citizens from the temptation to accept uncritically that which may be unreliable and of doubtful credibility." Levin and Cohen, *supra* at 905-06. Judges, however, by virtue of their legal training and professional experience can be expected to sift through the evidence, critically analyze it, and discard that which is not properly presented. As a result, an appellate court can more readily presume proper decisionmaking when the trier of fact is a judge.

*Commonwealth v. Berkery, supra,* illustrates this reasoning. There the defendant was tried by a judge without a jury and found guilty of an attempt to commit burglary, possession of burglary tools, and conspiracy. The evidence of guilt was overwhelming. The defendant sought a new trial on the ground, among others, that "the trial judge sitting without a jury may well have been influenced by the fact that during the course of the trial, he became aware of the identity of the Defendant who had become the subject of great notoriety and publicity close to the time of the trial." *Id.* at 628, 190 A.2d at 573. The trial judge indicated that he realized that the defendant was the person who had been linked with another pending criminal case receiving wide publicity. Nevertheless, this court refused to reverse the conviction. WOODSIDE, J., speaking for the majority, said: "When a judge is hearing a case without a jury, he should try to avoid receiving knowledge concerning the case and the parties which would be denied to a jury, but this is not always possible. . . . Judges are human, but they are also specially trained to decide cases on the evidence. They are conscious of the dangers of irrelevant facts and zealously guard themselves against being influenced by any facts not obtained from the evidence. . . . We are satisfied that the trial judge decided the case on the evidence, that he zealously protected the defendant's interests and that he was not prejudiced or influenced in his decision by the statement he read or the knowledge he obtained concerning the identity of the defendant." *Id.* at 629-30, 190 A.2d at 573-74. Similarly, in *Commonwealth v. Mangan,* 220 Pa. Superior Ct. 54, 281 A.2d 666 (1971), we refused to reverse the defendant's conviction, even though out-of-court statements by co-defendants were introduced into evidence against him, because among other things the case was tried by a judge sitting without a jury. We said[2] the "risk is not present in this

---

2. SPAULDING and HOFFMAN, JJ., dissented.

case where the fact finder is the judge who, in a jury trial, would be the one to give the instruction to the jury to disregard such prejudicial evidence. Certainly it is not too unreasonable to presume that he would himself obey the mandate he would have given to a jury." *Id.* at 58, 281 A.2d at 668.

Statements such as these must, however, be read with care, lest we overlook the fact that judges are subject to the same emotions and human frailties as affect all persons, lay jurors or not. Recognizing this, other judges have on occasion questioned any presumption of special judicial detachment. For example, in *Kovacs v. Szentes,* 130 Conn. 229, 232, 33 A.2d 124, 125 (1943), the Supreme Court of Connecticut said: "A judge has not such control over his mental faculties that he can definitely determine whether or not inadmissible evidence he has heard will affect his mind in making his decision." In the same vein, the cases following *Jackson v. Denno, supra,* reflect judicial concern that determinations of voluntariness will be infected by the evidence as to guilt or innocence in the minds of trial judges as well as jurors. In *United States ex rel. Owens v. Cavell,* 254 F. Supp. 154 (M.D. Pa. 1966), and *Hutcherson v. United States,* 351 F.2d 748 (D.C. Cir. 1965), it was held that separate hearings were required to make sure that the judge, in determining voluntariness, was not influenced by the evidence of guilt or by the truth of the confession. *See also Commonwealth ex rel. Owens v. Cavell,* 207 Pa. Superior Ct. 167, 215 A.2d 260 (1965) (HOFFMAN, J., dissenting) ("I believe that when a judge is sitting as fact-finder, the proper administration of criminal justice would require that the defendant be permitted to testify fully with respect to the confession before a second judge and still be assured that the trial judge had not been influenced by that testimony.") Likewise, in *United States ex rel. Spears v. Rundle,* 268 F. Supp. 691 (E.D.Pa. 1967), *aff'd,* 405 F.2d 1037 (3d Cir. 1969), District Judge John

W. Lord, Jr., stated: "The primary distinction between *Jackson* and the present case is that Spears was tried by a judge without a jury. The question for our decision is whether *Jackson* requires a separate hearing on the issue of voluntariness where the fact finder is a judge rather than a jury. We think that the decision in *Jackson* requires such a result. The function of a judge trying a case without a jury is twofold: he is a finder of fact, as well as an arbiter of the law. The responsibility is burdensome. But the task becomes too great when we require a judge who has heard evidence of guilt, to objectively and coldly assess a distinct issue as to the voluntariness of the confession. Objectivity cannot be guaranteed and reliability must be questioned. *Jackson* properly construed, prohibits the finder of fact from passing on the voluntariness of a confession since its decision as to voluntariness could be colored by evidence as to guilt." *Id.* at 695.

In addition, it must be noted that this court has questioned and rejected the notion that a trial judge, due to his legal training and experience, is uniquely able to disassociate the incompetent evidence from the competent. In *Commonwealth v. Rivers*, 218 Pa. Superior Ct. 184, 279 A.2d 766 (1971), the trial judge sitting without a jury heard testimony concerning prior crimes of the defendant and concerning a pending murder charge against him. This court held,[3] per Jacobs, J., that this testimony was "so prejudicial that the trier of facts, even though he was an able and experienced trial judge, could have come to no other conclusion than that appellant had a predilection for crime." *Id.* at 187, 279 A.2d at 768. Another example is *Commonwealth v. Lockhart*, 227 Pa. Superior Ct. 503, 322 A.2d 707 (1974). There, in determining the prejudicial effect of the introduction at trial of police photographs of the defendant, we said,

---

3. Wright, P.J., and Watkins, J., would have affirmed on the opinion of the lower court.

in *dictum,* that the "fact that the trial judge, and not a jury, is acting as the trier-of-fact compels no different result." *Id.* at 505-06, 322 A.2d at 708. *See also Commonwealth v. Scannell,* 224 Pa. Superior Ct. 196, 303 A.2d 46 (1973) (affirmance by an equally divided court, HOFFMAN, J., dissenting) ; *Commonwealth v. Dill,* 224 Pa. Superior Ct. 160, 303 A.2d 50 (1973) (affirmance by an equally divided court, HOFFMAN, J., dissenting) ; *Commonwealth v. Goodman,* 221 Pa. Superior Ct. 73, 289 A.2d 186 (1972) (affirmance *per curiam,* SPAULDING, J., dissenting).

It is plain from the cases cited that in some instances due process requires that we not simply rely on the fiction of a judicial blindside. It is also plain, when cases like *Berkery* and *Mangan* are compared with cases like *Rivers,* that at least in Pennsylvania no fixed rule has been announced for determining when a trial judge will be regarded as having been able to maintain his impartiality after hearing incompetent evidence. We do not undertake to announce such a rule now. Instead, we shall continue to decide each case according to its particular facts. In so doing, however, we do explicitly recognize that two factors will be considered of critical import. One factor will be the inherently prejudicial quality of the specific evidence involved. This, as indicated, was determinative in *Rivers.* There the evidence was "so prejudicial" that the risk of improper adjudication could not be ignored. In contrast, when the risk is not of emotional impact but rather of intellectual error in tracing a chain of inferences or in recognizing the pitfalls of double hearsay, greater weight will be given to judicial expertise. *See* Levin and Cohen, *supra; Davis, supra.* The other factor will be the importance of the evidence to the particular case. Suffice it to say that when, as in *Berkery,* the other evidence is overwhelming, we shall be less sensitive to the risk of harmful prejudice below.

When these two factors are considered in the present case, it becomes clear that a new trial is required. First, the evidence was not overwhelming, the determination of guilt or innocence turning entirely on which witnesses the trial judge believed. As has been noted, if he believed the Commonwealth's witnesses, he had to find appellant guilty, but if he believed appellant, he had to find appellant not guilty. None of the testimony was incredible. The intrusion into the decision-making process of inadmissible evidence that might predispose the trial judge to believe one side or the other was therefore of vital importance. Second, the inadmissible evidence—Lehman's statement that appellant had pleaded guilty at the preliminary hearing—was inherently highly prejudicial for it indicated that appellant was lying either at the preliminary hearing or at trial. Thus, no matter which way the evidence was taken, it cast a shadow on appellant's testimony and therefore the whole case. In *Commonwealth v. Horner,* 453 Pa. 435, 441, 309 A.2d 552, 555 (1973), the Supreme Court held that the "adverse use of testimony given by defendant at a preliminary hearing without advice of counsel is far more prejudicial to him than the use of a statement given to the police without the required Miranda warnings because that testimony is given under oath in open court before an impartial magistrate...", and therefore it cannot be used even for impeachment purposes. In *Commonwealth ex rel. Firmstone v. Myers,* *supra* at 635, 246 A.2d at 375, the Supreme Court declared that "any violation of *White v. Maryland* [373 U.S. 59 (1963), forbidding introduction at trial of an uncounselled guilty plea entered at a preliminary hearing] requires an automatic reversal without regard to whether the error could have been harmless." The reason underlying this decision was the realization that the violation tends to have the "greatest adverse effect on the reliability of the guilt determining process...." *Id.* at 636, 246 A.2d at 375. The same must be said of the evidence in-

volved in this case. In fact, it would seem that if the evidence of other crimes in *Rivers* was "so prejudicial" that reversal was required *a fortiori,* Lehman's statement must also require reversal. It may well be that the trial judge attempted to disregard the statement. However, the statement was so prejudicial and so vitally important to appellant's case that we cannot presume he succeeded.[4]

The judgment of sentence is reversed and the case is remanded for a new trial.

JACOBS and PRICE, JJ., dissent.

---

4. This conclusion makes it unnecessary to consider appellant's contention that the trial judge also committed reversible error when he refused to declare a mistrial after Lehman testified that appellant had offered to settle the case.