## Commonwealth v. Keown

*John B. Lampi, Assistant District Attorney*, for Commonwealth.

*Cynthia Weaver, Assistant Public Defender*, for defendant.

GARB, *J.*, January 16, 1978—Defendant was tried before the undersigned without a jury in a one count charge of issuing or passing a bad check in violation of the Crimes Code of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §4105. Upon conviction defendant has filed post-trial motions as in the nature of motions in arrest of judgment or for a new trial which have been argued before the court en banc and are hereby dismissed.

At the trial it was established without contradiction, and actually without contest, that on May 21, 1976, defendant, as president of Gesko Homes, Ltd., a corporation, signed a check in the amount of $1,350 drawn to the order of Reese's Landscaping Company and delivered such check to Charles S.

Reese. The check was drawn on the Central Penn National Bank and at the time of its making and delivery there were insufficient funds in the account to pay the check. Ultimately the check was returned to Reese for insufficient funds. At the time the check was passed or delivered by defendant it was in payment for an invoice rendered by Reese for goods and services rendered, i.e. for a past due debt.

It is defendant's contention that where an admittedly bad check is issued for a past due debt and not for presently passing consideration, the crime of bad checks does not lie. Clearly that constitutes a correct statement of the law prior to the enactment of the Crimes Code. Prior to the effective date of the Crimes Code it was held that in order to convict an individual of issuing a worthless check the Commonwealth must prove that he (1) made, drew, uttered, or delivered a check, (2) with knowledge that there were insufficient funds, and (3) with intent to defraud: Com. v. Horton, 465 Pa. 213, 348 A. 2d 728 (1975). In addition, the cases required the Commonwealth to prove that at the time the check was issued, something of value passed from the payee to the drawer or maker. See Com. v. Conti, 236 Pa. Superior Ct. 488, 345 A. 2d 238 (1975).

However, the Crimes Code significantly changed the language of the offense. Previously, the offense was defined as being committed whenever someone "with intent to defraud, makes, draws, utters or delivers any check, draft, or order for the payment of money." See the Act of June 24, 1939, P.L. 872, sec. 854, 18 P.S. §4854. The bad check charge for which defendant was tried under the Crimes Code is defined as follows: "A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not

be honored by the drawee." §4105. Of significance is the fact that the crime as set forth in the Crimes Code no longer requires the "intent to defraud" as contained in the Act of June 24, 1939, P.L. 854. We are satisfied that it is of some significance that the legislature omitted the specific intent to defraud from the definition of the bad check crime in the Crimes Code. Clearly the legislature understood the significance of these words because in the very same chapter in which the bad check charge is found the legislature saw fit to include an intent to defraud as an element of forgery, see 18 C.P.S.A. §4101, in the crime of simulating objects of antiquity, see 18 C.P.S.A. §4102, and in the fraudulent destruction, removal or concealment of recordable instruments, see 18 C.P.S.A. §4103. See also 18 C.P.S.A. §4104 defining tampering with records or identification. We believe, therefore, that by the omission of the specific element of intent to defraud from the bad check charge the legislature intended to denominate passing a check for which there are insufficient funds with knowledge of the issuer as a crime regardless of whether present consideration passes at the time of the passing of the check or not.

There is no question in this case concerning whether defendant knew that the check would not be honored at the time he issued it. He admitted that there were insufficient funds in the bank at the time of issuance and that he knew that. Rather, he contended that at the time he issued the check he advised Reese that there were insufficient funds and that Reese was to hold it for some period of time until funds could be deposited to the account. Essentially, defendant attempted by virtue of this line of testimony to convert this into a postdated check,

which, of course, would not be included within the purview of the offense. See subsection (b) having to do with presumptions; see also Com. v. Massaro, 97 Pa. Superior Ct. 149 (1929), and Com. v. Kelinson, 199 Pa. Superior Ct. 135, 184 A. 2d 374 (1962). However, the undersigned did not believe that testimony and rejected the contention that Reese was advised to hold the check for some period of time at the time he received it. Therefore, this is not an issue in this case.

Notwithstanding that, defendant contended at trial that if present consideration is not required as an element of the offense, then the statute is unconstitutional as constituting imprisonment for debt. We believe that that argument lacks a logical matrix and therefore is meritless. In defining the crime as a passing of a bad check knowing that it would be dishonored, regardless of consideration, the legislature did not evolve or proclaim indebtedness as a crime, but rather proclaimed it a crime for anyone to issue a bad check regardless of whether present consideration flows. The purpose of this statute is not to imprison debtors but to protect against impairment of commercial transactions. Most business today is conducted by the use of checks and, as such, checks have assumed virtually the same value as governmental currency. As such, the legislature has declared it a crime for anyone to impugn or impair such a document regardless of the nature of the transaction in which it is passed. This we believe to be within the parameters of the police power of the legislature and we find no impairment to the constitutionality of such act.

We are aware that in Com. v. Willet, 74 D. & C. 2d 368 (1976), and in Com. v. Ulsh, 68

D. & C. 2d (1974), two other courts of common pleas of this Commonwealth have construed this section of the act of assembly to include the intent to defraud as an integral part thereof. In each case this determination was achieved on the theory that an intent to defraud must be read into the statute as a sine qua non to a constitutional construction thereof on the theory that otherwise the statute would constitute an unconstitutional imprisonment for debt as is asserted by defendant herein. As previously noted, however, we do not believe that such a construction is necessary for a constitutional construction of this act of assembly. Therefore, we are loath to incorporate specific provisions not specifically included by the legislature in drafting this legislation. We are satisfied that this construction of the act and our interpretation of the legislative intent is likewise consistent with the Statutory Construction Act of December 6, 1972, P.L. 1339, 1 Pa.C.S.A., §1921.[1]

Defendant argued at trial that in view of the fact that the check was drawn on a corporate account, he cannot be found guilty of this offense. Once

---

1. Importing the language of intent to defraud under these circumstances, would, in our opinion, constitute judicial legislation. Clearly the legislature omitted these words where they had previously been included in defining the same offense. As noted, the legislature included the words of "intent to defraud" as elements of other criminal conduct contained in the same chapter of the Crimes Code. From this, it is patent that the legislature intended to omit the words of "intent to defraud" and it is our opinion that we cannot justify including them, where the legislature excluded them, under the pretense of breathing constitutionality into this statute. In our opinion, either the statute is unconstitutional as drawn or is constitutional as construed as we do herein.

again, this argument is totally meritless. An officer of a corporation duly authorized to issue its checks, who does so knowing that the check will be dishonored, is guilty of a violation of this act. See Com. v. Bonetti, 211 Pa. Superior Ct. 161, 235 A. 2d 447 (1967).

Lastly defendant argues that somehow he is protected from prosecution by virtue of the application of the Federal Bankruptcy Act. He asserts that Gesko Homes, Ltd., the entity of which he was president and on whose account he wrote the check in question, was adjudicated a bankrupt and that Reese as a creditor of the bankrupt corporation filed a claim in the Federal Bankruptcy Court. Somehow defendant contends that these facts constitute a defense to this criminal prosecution. We are aware of no provision of the Federal Bankruptcy Act which insulates a bankrupt or a principal of a bankrupt corporation from criminal liability for crimes committed by that principal in violation of the State criminal law. None has been asserted and we dismiss this contention summarily.

For the foregoing reasons defendant's motions are denied.

## ORDER

And now, January 16, 1978, it is hereby ordered, directed and decreed that defendant's motions as in the nature of motions in arrest of judgment or for a new trial are denied, dismissed and overruled and defendant directed to appear before the undersigned in court room No. 2 at 10 o'clock a.m. on February 6, 1978, for the purpose of imposition of sentence.