401 A.2d 1348

COMMONWEALTH of Pennsylvania

v.

Richard G. MORRISON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Florence MORRISON, Appellant.

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided April 19, 1979.

Wilbert H. Beachy, III, Chief Public Defender, Somerset, for appellant Richard G. Morrison.

Sandra W. Upor, Somerset, for appellant Florence Morrison.

Frederick F. Coffroth, District Attorney, Somerset, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

Appellants, Florence and Richard Morrison, were convicted of aggravated assault,[1] recklessly endangering another person,[2] and endangering the welfare of children,[3] at a non-jury trial in Somerset County. Appellants' motion for arrest of judgment was granted on the aggravated assault conviction. Additional motions for new trial were denied. Appellants were sentenced to undergo imprisonment for not less than nine months nor more than two years on the recklessly endangering charge, and not less than six months nor more than two years on the charge of endangering the welfare of children. The sentences are to run consecutively. It is from these judgments of sentence that appellants appeal. We affirm.

The appellants were married in 1974 and had six children residing in their home. Four of the children were Florence's by a prior marriage and two, including John, six years of age and the victim in this suit, were Richard's by his prior marriage. Richard's two children had resided with their maternal grandparents but were removed from that home when appellants heard John had been mistreated there. John came to live with appellants in February, 1976, with the other child following in April, 1976.

The day after appellants obtained custody of John, Florence Morrison took him for a physical examination. The doctor reported John was in general good health, slightly anemic and underweight, and getting over the chicken pox.

On May 31, 1976, appellants and all six children attended a Memorial Day picnic. John was playing under or near a picnic table when a ball struck some hot coffee that spilled

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. § 2705.

3. 18 Pa.C.S.A. § 4304.

on him. John's abdomen, penis, and part of his leg were burned by the hot liquid. A doctor examined John on June 2 and prescribed a salve to be applied to the burns. On June 7, after a return visit to the doctor, John's condition was found to be improving and required no further treatment. Some of the burns were second degree with scarring and scabbing, but there were no open wounds.

From the testimony presented, John developed a wetting problem about the time appellants obtained custody of his sister in April, 1976. Florence kept John in diapers in order to help with this situation. The diapering continued after the Memorial Day incident until July 28, 1976 when John was taken to the hospital for an elbow injury. During this time, Florence admitted putting table salt in John's diaper in an attempt to cure the wetting. She also applied the prescribed salve to the penis area with gauze on top, and on at least one occasion, secured the gauze by a rubber band for want of adhesive tape. One witness testified Florence had done this to prevent wetting which Florence denied. Mr. Morrison admitted he had diapered John several times during this period.

The physicians who testified concerning John's condition when he entered the hospital said John's penis was ulcerated and swollen with only a narrow opening, was scabbed and had been denuded of skin. According to the doctor, the cause of the condition was either from a second burn to the penis or from all the irritation from the diapers, salt, clothing, and John's scratching the area. The doctor testified that the incident involving the rubber band could also have aggravated the situation, and if tight enough, could have cut off the circulation. John was hospitalized for seven weeks [4] and the infection required surgery to remove the scabbing and clean the tissues. The urologist estimated that the infection had taken three to six weeks to develop and that death or loss of the organ could have ensued if John had not

4. Appellant's brief claims John was only hospitalized for three weeks. However, the treating physician testified John's hospital stay was approximately seven weeks. (N.T. 136).

received medical attention. At the time of the trial, John had recovered from the infection but it could not be definitely stated whether there had been any permanent injury to the underlying erectile tissues. Appellants denied that they inflicted any type of injury upon John, but Mrs. Morrison admitted to a social worker that she had neglected the child by not taking him to a doctor sooner.

Aside from this incident, there was additional medical testimony and evidence of other bodily wounds on John, some old bruises and fractures, and healed body scars. One physician counted between fifty to sixty healed wounds including wounds that appeared to be from cigarette burns, scratches and scabbing. Most of these latter wounds appeared to be old.

Based on this evidence, the trial judge sitting without a jury found appellants guilty of aggravated assault, recklessly endangering another person, and endangering the welfare of children. Subsequently, arrest of judgment was granted on the charge of aggravated assault. On appeal, appellants raise three issues concerning the remaining two convictions: first, whether there is sufficient evidence to support the convictions of recklessly endangering another person and endangering the welfare of children; second, whether certain trial errors require a new trial; and third, whether their sentences are excessive.[5]

I.

In addressing the first issue, the test of the sufficiency and the weight of the evidence is whether, accepting as true all of the Commonwealth's evidence and all reasonable inferences therefrom, the evidence is sufficient to prove beyond a reasonable doubt that the appellants are guilty of the crimes charged. *Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977). Even when applying this test to the

5. We must note that the Commonwealth's brief is written as if the Commonwealth had cross-appealed on these issues when, in fact, no such appeal has been filed. We cannot condone the confusion of argument in the Commonwealth's brief.

evidence, appellants contend there was not sufficient evidence to prove the elements of the crimes for which they were convicted. We disagree.

■ Appellants were convicted of recklessly endangering another person. The statute reads:

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S.A. § 2705.

Appellants argue their failure to take John to the doctor sooner was neither a "reckless" act nor did it place him in danger of serious bodily injury. Recklessly is defined in the statute as when an actor:

". . . consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. C.S.A. § 302(b)(3).

Appellants' argument that they were not aware of the risk of injury to Johnny's health by the diapering and treating of his wetting problem is unfounded. One does not need a medical expert to diagnose what was clearly a deteriorating physical condition in the child of which appellants were aware through the diapering process. Any reasonable person observing like circumstances could have been expected to seek medical treatment for the child as soon as the burns on his penis were no longer healing but beginning to swell and become infected. The evidence clearly supports a finding that the parents' failure to take the child to a doctor for a two-month period was a gross deviation from what the reasonable person would have done within the meaning of the statute. See *Commonwealth v. Aurick,* 342 Pa. 282, 19 A.2d 920 (1941); *Lloyd v. Noakes,* 96 Pa.Super. 164 (1929).

Appellants also contend their inaction did not place John in danger of death or serious bodily injury since he had recovered at the time of the trial. Serious bodily injury is defined as:

"[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. § 2301.

In the instant case, the urologist testified that death or the loss of the organ could have occurred if the child had not been medically treated in time. Based on this testimony, appellants feel any "serious bodily injury" was merely conjecture. Under these circumstances we cannot agree. In *Commonwealth v. Kibe,* 258 Pa.Super. 353, 392 A.2d 831 (1978) a majority of our court upheld a conviction for aggravated assault where defendant struck his victim, causing her to fall to the ground and suffer a fractured nose. This, coupled with other actions of the defendant, was held sufficient to find the assailant attempted "serious bodily injury" on the victim. *Commonwealth v. Alexander,* 477 Pa. 190, 194, 383 A.2d 887, 889 (1978). See also *Commonwealth v. Gregory,* —— Pa.Super. —— (J.172/78, filed —/—/79). Also *Commonwealth v. Painter,* 32 Som. 115 (1976) quotes the comments from the Model Penal Code section from which § 2705 of our Crimes Code is adapted, stating:

" 'It [2705] does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the zone of danger.' " 32 Som. at 115.

In *Painter,* as in *Kibe,* the creation of a potential danger was sufficient to uphold the convictions. Here, the evidence clearly supports such a holding. The complete disregard of the child's worsening condition caused the infection to reach an acute stage that was caught in time only because the child received another injury that required attention.

Appellants were also convicted of endangering the welfare of children which reads:

"A parent . . . supervising the welfare of a child under 18 years of age commits a misdemeanor of the second degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S.A. § 4304.

Here, appellants argue their breach of care was not "knowing." As we have already stated, a reasonable person would be expected to recognize the abnormal situation and seek treatment. Juvenile statutes are to be broadly construed to effectuate the purpose of safeguarding helpless victims. *Commonwealth v. Mack,* 467 Pa. 613, 617, 359 A.2d 770, 772 (1976). This section of the Crimes Code withstood a constitutional attack for vagueness in *Commonwealth v. Mack,* supra where the court said,

"The offense involves the endangering of the physical or moral welfare of a child by an act or omission in violation of legal duty even though such legal duty does not itself carry a criminal sanction." 467 Pa. at 616, 359 A.2d at 771, quoting from the Pa. Joint State Government Commission comments.

Together with this standard it must also be noted that juvenile statutes must be interpreted by the common sense of the community, as well as with its sense of decency, propriety and morality. *Commonwealth v. Marlin,* 452 Pa. 380, 386–87, 305 A.2d 14, 18 (1973). It is clear that the facts of this case demonstrate that the common sense of the community would be outraged by such a knowing failure to treat this child sooner. The evidence clearly supported convictions on this count.

## II.

Appellants' second argument is that three trial errors require us to grant a new trial. The first concerns the use of eight photographs and four color slides of the child's body when he was admitted to the hospital in late July, 1976. The photos showed various views of the child's body and various injuries, including the infected and swollen penis. Appellants contend that although these pictures were au-

thenticated and relevant, their prejudicial value outweighed any probative effect, especially since the doctor testified that he felt a reasonable person could have understood the testimony without reference to them.[6]

■ As was pointed out by the lower court, it was imperative for the court to know exactly what appellants knew and saw when Johnny was admitted to the hospital. The test to be applied is the prejudice versus probative effect of the pictures. *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968). If the evidence presented by the pictures is merely cumulative, they will not be admissible. But if they add to the evidence produced at trial without unduly inflaming the passions of the jury or prejudicing the defendants they will be admitted. *Id.*

■ Although some of the pictures in the case at bar were repetitious and not of the child's condition as he was admitted to the hospital, we do not feel they prejudiced the judge's thinking or that a new trial should be granted. The pictures do show the bruises and injuries to John, but they also have an exculpating factor in that John is not underweight and is smiling on most of them. These pictures are far from those excluded in the cases cited by appellants. E. g., *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974) fourteen color slides of a nude corpse with the heart removed should not have been shown; *Commonwealth v. Johnson,* 402 Pa. 479, 167 A.2d 511 (1961) bruised corpse displayed on a screen for one and one half days of a four-day trial was excessive. Also, a judge sitting without a jury is presumed to be more objective when viewing such pictures than a jury would be. In viewing the situation as a whole, we do not feel the admission of the photographs was unduly prejudicial.

■ Second, appellants argue that two comments by the district attorney were prejudicial and require the granting

6. See N.T. at 149.

of a new trial.[7] However, the evidence the district attorney attempted to elicit was properly excluded by the trial judge and therefore posed no reversible error.

Appellants argue further that since the trial judge sat as judge and jury, he could not disassociate these comments in his roles and he improperly denied a mistrial due to these comments. The decision to declare a mistrial is within the discretion of the trial judge and will not be reversed absent a manifest abuse of that discretion. *Commonwealth v. Conti*, 236 Pa.Super. 488, 495, 345 A.2d 238, 242 (1975). However, "[t]he fact that a particular case was tried non-jury is . . . relevant in determining whether a mistrial should have been granted, although this factor should be carefully scrutinized by the appellate court. *Commonwealth v. Williamson*, 243 Pa.Super. 139, 364 A.2d 488 (1976); *Commonwealth v. Conti*, supra; *Commonwealth v. White*, 227 Pa.Super. 498, 323 A.2d 238 (1974)." *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 385 A.2d 405 (1978). In this case, we do not feel that these two isolated incidents were so prejudicial that the trier of fact was "[un]able to put the evidence aside and arrive at an impartial adjudication." *Commonwealth v. Conti*, 236 Pa.Super. at 495, 345 A.2d at 242.

Third, appellants argue they were denied a fair trial due to the fact the judge received a letter from appellants' neighbors prior to the end of the trial concerning the case. The letter inquired as to John's situation and why appellants had a right to a trial and attorneys. It in no way added any substantive facts to the case. Therefore there was no violation of the rule that the trier of fact must not possess any knowledge of the case prejudicial to the accused. *Commonwealth v. Fields*, 231 Pa.Super. 238, 331 A.2d 494 (1974). The letter was a crude attempt to influence the trial court,

7. The first comment dealt with the fact that another child of Richard's had been removed from the home several years prior to this case. The statement was made in response to a defense objection. The second statement was made during an offer of proof concerning the prior inconsistent statements of the children that were made to a licensed preacher.

which did not nor could it have succeeded. The writers' ignorance of the judicial process required the trial judge, as he stated in his opinion, to summarily disregard it.

We conclude these three points raised by appellants are not errors upon which a new trial can be based.

## III.

 Finally, appellants argue their sentences are excessive [8] and violate their Fifth Amendment rights against double jeopardy under the United States Constitution. The general rule is that sentencing is a matter left to the lower court's discretion and will not be reversed absent an abuse of that discretion or an error of law. *Commonwealth v. Smith,* 247 Pa.Super. 36, 371 A.2d 1025 (1977). In the sentencing process, one unlawful act may constitute more than one crime. As long as a defendant is not punished twice for the same act he has no cause of complaint. *Commonwealth v. Cox,* 209 Pa.Super. 457, 465, 228 A.2d 30, 34 (1967). Appellants argue that their consecutive sentences arise out of the same transaction involving the child's infected penis and therefore they cannot be punished twice for that one act. However, there is more to the case than just this one incident. The indictment clearly states separate incidents of appellants' striking John with a piece of wood, causing bruises, the incident with the rubber band, cigarette burns, as well as the statutory violations of recklessly endangering another person and endangering the welfare of children. The lower court's opinion states the additional evidence adduced at trial concerning other incidents of abuse. Taking the case as a whole, the evidence manifested more than the single incident involving the child's infected organ.

 It must also be noted that appellants themselves recognized the separateness of their convictions in their

8. This issue is not waived. *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976).

post-trial motions.[9] There, although they argued the offenses of aggravated assault and recklessly endangering were the same, they acknowledged that the prosecutions for endangering the welfare of children were separate and distinct causes of action. Since the convictions involve different criminal elements and involve more than one event, the sentences imposed do not violate appellants' Fifth Amendment rights. They are within the lawful limits for second degree misdemeanors and are not excessive.

Judgments of sentence affirmed.

SPAETH, J., concurs in the result.

JACOBS, former President Judge and HOFFMAN, J., did not participate in the consideration or decision of this case.

**9.** See Motion in Arrest of Judgment at No. 11 in the case of Florence and at No. 7 in the case of Richard.