J-S18019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA ALLEN COCHRAN | |
| Appellant | No. 480 MDA 2015 |

Appeal from the Judgment of Sentence October 27, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007161-2013

BEFORE:  BOWES, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 02, 2016**

Joshua Allen Cochran appeals from his judgment of sentence entered in the Court of Common Pleas of York County, following his conviction of Endangering the Welfare of a Child ("EWOC").[1]  After careful review, we affirm.

The facts are set forth as follows.  Amy Funt and Joshua Cochran are the parents of Child, born February 21, 2012.  On April 30, 2012, Funt and Cochran brought Child to the University of Iowa Children's Hospital to treat a cold that had worsened.  However, while at the hospital, medical personnel noticed that Child cried when her legs and arms moved.  Due to the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304.

suspicion of child abuse, Child was admitted to determine the severity of her injuries. Dr. Resmiye Oral examined Child on May 1, 2012. Dr. Oral discovered that she had numerous rib fractures, as well as healing fractures in her left fibula and right tibia. Dr. Oral counted nineteen different skeletal injuries on Child's body. In addition, Dr. Oral concluded that Child suffered from periosteal reaction, a new bone formation that occurs after there has been trauma. Child suffered from this reaction in her right humerus, both femurs, and left tibia.

To determine the origins of Child's injuries, Dr. Oral performed tests for any condition that might have caused her bones to break easily. Child's bone density was normal, genetic tests were negative, and there was no evidence of brittle bone disease. Dr. Oral concluded that the injuries were trauma-related and that there was no plausible medical explanation for the injuries.

When Dr. Oral confronted Funt and Cochran about Child's injuries, Cochran stated that he was playing video games with Child lying on the couch when she fell onto the floor. Funt indicated she informed the Department of Human Services that Child was injured when she was lying in Funt's lap when Funt leaned forward to catch a ball. Dr. Oral disbelieved both explanations as to the root of Child's injuries and filed a report with Child Protective Services on her behalf. Although Child now lives in Iowa, the abuse occurred in Pennsylvania, and Trooper Christopher Calarusso of the Pennsylvania State Police investigated.

At trial, Dr. Oral testified as an expert in pediatrics and child abuse. Dr. Oral stated that rib fractures are indicative of physical abuse because such injuries are inflicted by squeezing a child's chest cavity. Furthermore, Dr. Oral stated that Child would have been in extreme pain and the person who inflicted this injury would have known that something significant had happened. Child would have cried because of significant pain at the time of injury, lasting from fifteen minutes to a few hours in length. Child would have reacted in pain when the fracture fragments at the injury sites were moved within ten to fourteen days of healing. Dr. Oral noted that Cochran indicated that Child was a fussy baby who cried a lot and woke up several times during the night.

Dr. Oral further determined that Child received the fractures approximately four to six weeks before admission to the hospital. However, because Child did not exhibit any signs of pain or irritability at her checkup appointment at the Springdale Pediatric Clinic on April 6, 2012, the fractures could have occurred as recently as three and a half weeks before admission. Lastly, Dr. Oral concluded that the periosteal reactions occurred two to four weeks prior to Child's admission to the hospital.

Dr. Danielle Boal, an expert in pediatric radiology, agreed with Dr. Oral's findings and concluded that the injuries would have caused Child to be irritable when lying still. Furthermore, Dr. Boal testified that caregiving tasks such as dressing Child would have aggravated her pain and resulted in her crying.

Only Funt and Cochran care for Child and when Funt would depart for work at night, Cochran was the sole caregiver. As the sole caregiver at night, Cochran testified he would feed and change Child. Before Child's visit to the hospital for a cold on April 30, 2012, she had two routine pediatric visits on March 7, 2012, and April 6, 2012. Cochran further testified that he did not harm Child, she was not a fussy baby, and she did not cry often.

On September 5, 2014, at the conclusion of a jury trial, Cochran was found guilty of EWOC. On October 27, 2014, Cochran was sentenced to a period of incarceration of one year minus one day, to two years minus two days.

Cochran filed this timely appeal in which he asserts that the evidence was insufficient to sustain a guilty verdict for EWOC and that the jury's finding of guilt for this offense was against the weight of the evidence presented at trial.

Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Any doubts concerning an appellant's guilt [are] to be resolved by trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom." *Commonwealth v.*

*West*, 937 A.2d 516, 523 (Pa. Super. 2007). "[T]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Perez*, 931 A.2d 703, 707 (Pa. Super. 2007).

Endangering Welfare of Children is defined as follows:

**§ 4304 Endangering Welfare of Children**

(a) Offense defined – A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating the duty of care, protection, or support.

18 Pa.C.S. § 4304

Here, Cochran argues that the Commonwealth failed to establish that he was aware of the circumstances that threatened Child's physical or psychological welfare or that he did not reasonably act to protect her welfare. We disagree.

Evidence is sufficient to convict the accused for endangering the welfare of a child when:

The accused is aware of his or her duty to protect the child, is aware that the child is in circumstances that threaten the child's physical or psychological welfare, and has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect to the child's physical or psychological welfare.

*Commonwealth v. Mackert*, 781 A.2d 178, 187 (Pa. Super. 2001).

Child welfare statutes, such as EWOC, are to "be given meaning by reference to the common sense of the community and the broad protective

purposes for which they are enacted." ***Commonwealth v. Wallace*** 817 A.2d 485, 491 (Pa. Super. 2002). Evidence is sufficient to convict for EWOC when a parent is caring for a child and should be alerted to a child's worsening condition that warrants urgent medical attention but fails to do so. ***Commonwealth v. Morrison***, 401 A.2d 1348, 1352-53 (Pa. Super. 1979).

In ***Morrison***, Florence and Richard Morrison argued that the evidence was insufficient to support their conviction for EWOC. The evidence presented at trial, however, demonstrated that the child's urinary infection worsened while under the defendants' care and required the child to spend seven weeks in the hospital recovering. Doctors discovered the child's condition when the Morrisons brought the child to the hospital for an unrelated elbow injury. The Morrisons' argued that they were unaware of these circumstances. The court found this argument to be without merit. "The complete disregard of the child's worsening condition caused the condition to reach an acute stage that was caught in time only because the child received another injury that required attention." ***Morrison***, 401 A.2d at 1352.

Like the defendants in ***Morrison***, Cochran disregarded Child's serious condition that was discovered only because she developed a cold that required medical attention. Moreover, Dr. Oral testified that simply placing a hand on Child to pick her up would have caused her to be in pain. Furthermore, Dr. Oral's testimony indicated that "there was no plausible

accidental mechanism of injury to explain all of the child's injuries, and there was no medical explanation to explain all of those injuries either." N.T. Trial, 9/3/14, at 216. Cochran testified that at night, he was the primary caregiver to Child, which included feeding and changing her. In his brief, Cochran argues that the Commonwealth failed to establish he was aware of the threatening circumstances for Child. This argument is without merit, as the expert testimony shows a reasonable person would have been alerted to Child's unhealthy condition. Moreover, Cochran cites to no case law supporting his argument that a complete lack of knowledge is sufficient for an acquittal.

Next, Cochran challenges the weight of the evidence on the same grounds he challenges the sufficiency of the evidence.

In Pennsylvania, the standard of review for an appeal challenging the weight of the evidence is well-settled. The finder of fact is the exclusive judge of the weight of the evidence and is free to believe, all, part, or none of the evidence presented. **Commonwealth v. Cruz**, 919 A.2d 279, 281-82 (Pa. Super. 2007). Additionally, the finder of fact determines the credibility of the witnesses. **Id.** In reaching its decision, it is the duty of the finder of fact to reconcile inconsistent testimony and resolve any consistencies. **Commonwealth v. Manchas**, 633 A.2d 618, 624 (Pa. Super. 1993).

The relief sought in a weight of the evidence challenge is the award of a new trial. However, the Supreme Court of Pennsylvania has held that a new trial should only be granted if the finding was against the weight of the

evidence and is so contrary to the evidence that it shocks one's sense of justice. **Commonwealth v. Whitney**, 512 A.2d 1152, 1155 (Pa. 1986). Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003). Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. **Id.**

We find that the trial court did not palpably abuse its discretion in denying Cochran's weight claim. The expert evidence presented at trial showed the injuries received by Child indicated abuse. Moreover, expert testimony illuminated the fact that simply picking Child up would have caused her to be in pain. Although Cochran claims he had no knowledge of her injuries, the evidence presented showed Child cried often, which was indicative of pain. Because it is the jury's duty to reconcile possible inconsistent testimony and resolve any such inconsistencies, **Manchas**, **supra**, we conclude that the trial court did not abuse its discretion in concluding that the verdict was not against the weight of the evidence. **Champney**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2016